**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT,<br><br>     Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>     Defendant. | C.A. No.: 6:20-cv-00584<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT GOOGLE LLC'S FIRST AMENDED ANSWER TO**
**THE ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Defendant Google LLC ("Google") hereby responds to the Original Complaint (Dkt. No. 1) of Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Plaintiff" or "WSOU") with the following Answer and Affirmative Defenses. Google denies the allegations and characterizations in WSOU's Complaint unless expressly admitted in the following numbered paragraphs, which correspond to the numbered paragraphs in the Complaint.

**NATURE OF THE ACTION**

1.     Google admits that Plaintiff brought this action under the United States patent laws, 35 U.S.C. §§1, *et. seq.* Google denies any remaining allegations in this paragraph.

**THE PARTIES**

2.     Google is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies them.

3.     Google admits that Google LLC is a Delaware limited liability company. Google admits that it has an office located at 500 West 2nd Street, Austin, Texas 78701. Google denies any remaining allegations of this paragraph.

## JURISDICTION AND VENUE

4.      Google admits that Plaintiff brought this action under the United States patent laws, 35 U.S.C. §§1, *et. seq.*  Google denies any remaining allegations of this paragraph.

5.      Google admits that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). Google denies any remaining allegations of this paragraph.

6.      This paragraph sets forth argument and legal conclusions to which no response is required.  To the extent this paragraph includes any allegations to which a response is required, Google denies them, and specifically denies that it has committed acts of infringement in this District or any other district.

7.      Google admits that venue is proper in this District for purposes of this particular action but not convenient or in the interests of justice under 28 U.S.C. § 1404(a). Google admits that it has an office in this District and is registered to do business in the State of Texas. Google admits that it offers products and services in this District. Any remaining allegations in this paragraph consist of argument and legal conclusions, to which no response is required, but to the extent a response is required, Google denies the allegations, and specifically denies that it has committed acts of infringement in this District or any other district.

8.      To the extent the allegations in paragraph 8 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context. Google admits that as of August 2018, it had more than 800 employees in Austin.  Google denies any remaining allegations in this paragraph.

9.      To the extent the allegations in paragraph 9 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context. Google is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and therefore denies them.

10.     To the extent the allegations in paragraph 10 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context. Google admits that it has an office at 500 West 2nd Street in Austin, Texas that is at least 300,000 square feet. Google denies any remaining allegations in this paragraph.

11.     Google is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies them.

12.     To the extent the allegations in paragraph 12 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context.  Google denies any remaining allegations in this paragraph.

13.     To the extent the allegations in paragraph 13 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context. Google admits that it has offices in multiple countries, that it stores and organizes certain types of data, and that it serves digital content to end users around the world.  Google denies any remaining allegations in this paragraph.

14.     Denied.

15.     Google admits that it offers products and services in this District. Google denies any remaining allegations in this paragraph.

16.     To the extent the allegations in paragraph 16 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context.  Google denies any remaining allegations in this paragraph.

17.     To the extent the allegations in paragraph 17 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context.  Google denies any remaining allegations in this paragraph.

18.     To the extent the allegations in paragraph 18 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context.  Google denies any remaining allegations in this paragraph.

19.     Google states the following: Google uses a tiered network to deliver content to its users. The core of the network is Google's data centers which provide computation and backend storage. The next tier of Google's network infrastructure is known as "Edge Points of Presence" ("PoPs"), which connect Google's network to the rest of the internet. The last tier of the network is the "Google Global Cache" ("GGC") servers or "edge nodes." GGC servers are off-the-shelf computers hosted in the facilities of a local Internet Service Provider ("ISP"), at the request of the ISP.  If an ISP chooses to host a GGC server, then a copy of portions of certain digital content that is popular with the ISP's subscribers—say, parts of a popular YouTube video—can be temporarily stored or "cached" on the GGC server.  As a result, content requested by an end user can be fetched from the GGC within the ISPs network, so the request does not use long haul capacity to do so. GGC servers, though, are not necessary for the delivery of Google content. Google denies any remaining allegations in this paragraph.

20.     To the extent the allegations in paragraph 20 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context. Google states that, if an ISP chooses to host a GGC server, thena copy of portions of certain digital content that is popular with the ISP's subscribers—say, parts of a popular YouTube video—can be temporarily stored or "cached" on the GGC server.  As a

result, content requested by an end user can be fetched from the GGC within the ISPs network, so the request does not use long haul capacity to do so. GGC servers, though, are not necessary for the delivery of Google content. Google denies any remaining allegations in this paragraph.

21.    Google states that, if an ISP chooses to host a GGC server and a copy of portions of certain digital content is temporarily stored or "cached" on the GGC server, content requested by an end user can be fetched from the GGC within the ISPs network, so the request does not use long haul capacity to do so. GGC servers, though, are not necessary for the delivery of Google content. Google denies any remaining allegations in this paragraph.

22.    Google admits that at certain points in time, its GGC servers have run software that has been referred to as "ustreamer." Google denies any remaining allegations of this paragraph.

23.    Google admits that at certain points in time, its GGC servers have run software that has been referred to as "ustreamer." Google denies any remaining allegations of this paragraph.

24.    Google admits that at certain points in time, its GGC servers have run software that has been referred to as "ustreamer." Google denies any remaining allegations of this paragraph.

25.    Google states that, if an ISP chooses to host a GGC server and a copy of portions of certain digital content is temporarily stored or "cached" on the GGC server, content requested by an end user can be fetched from the GGC within the ISPs network, so the request does not use long haul capacity to do so. GGC servers, though, are not necessary for the delivery of Google content. Google admits that some GGC servers are hosted by ISPs in the Western District of Texas. Google denies any remaining allegations in this paragraph.

26.    Google states that if an ISP requests to host a GGC server, Google evaluates the request, and then the ISP and Google may enter into a service agreement that defines each party's role. Google denies any remaining allegations in this paragraph.

27.     Google admits that there are GGC servers in the Western District of Texas that are hosted by internet service providers. Google admits that the webpage in Paragraph 27 purports to identify ISP-hosted GGC servers in or around Midland, El Paso, Austin, and San Antonio.  Google admits that Midland, El Paso, Austin, and San Antonio are located in this District.  Google denies any remaining allegations in this paragraph.

28.     Denied.

29.     Google admits that GGC servers located in the Western District of Texas may cache content.  Google denies any remaining allegations in this paragraph.

30.     Google admits that GGC servers located in the Western District of Texas may cache content that may include portions of videos, apps, and other digital content. Google denies any remaining allegations in this paragraph.

31.     Google admits that GGC servers located in the Western District of Texas may cache content that may include portions of videos, apps, and other digital content. Google denies any remaining allegations in this paragraph.

32.     Google states that it may generate revenue by delivering advertising and when users purchase digital content through Google Play Store. Google denies any remaining allegations in this paragraph.

33.     Denied.

34.     Google is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies them.

35.     Denied.

36.     Denied.

37.     To the extent the allegations in paragraph 37 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context.  Google denies any remaining allegations in this paragraph.

38.     Denied.

39.     To the extent the allegations in paragraph 39 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context.  Google denies any remaining allegations in this paragraph.

40.     To the extent the allegations in paragraph 40 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context.  Google denies any remaining allegations in this paragraph.

41.     To the extent the allegations in paragraph 41 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context.  Google denies any remaining allegations in this paragraph.

## <u>COUNT ONE – INFRINGEMENT OF U.S. PATENT NO. 8,803,697</u>

42.     Google repeats and re-alleges its answers to the preceding paragraphs as if fully set forth here.

43.     Google admits that, on its face, U.S. Patent No. 8,803,697 ("the '697 patent") is titled "Detecting movement for determining characteristics of user notification" and lists an issue date of August 12, 2014. Google admits that Exhibit A appears to be a copy of the '697 patent, but lacks sufficient information to verify its authenticity. Google denies that the '697 patent was duly and legally issued. Google lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in this paragraph, and therefore denies them.

44.     Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies them.

45.     This paragraph sets forth argument and legal conclusions to which no response is required. To the extent this paragraph includes any allegations to which a response is required, Google denies them, and specifically denies that it has committed acts of infringement in this District or any other district.

46.     To the extent the allegations of this paragraph concern WSOU's definition of the term "Accused Products," they state no facts for Google to admit or deny. Google denies any remaining allegations in this paragraph.

47.     To the extent the allegations in paragraph 47 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context. Google admits the Pixel 4 and Pixel 4 XL are smartphones that include a feature marketed as "motion sense". Google denies any remaining allegations in this paragraph.

48.     To the extent the allegations in paragraph 48 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context. Google admits that Google's Pixel 4 and Pixel 4 XL smartphones include internal storage. Google denies any remaining allegations in this paragraph.

49.     To the extent the allegations in paragraph 49 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context. Google denies any remaining allegations in this paragraph.

50.     To the extent the allegations in paragraph 50 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source

of their full content and context. Google states that the Pixel 4 and Pixel 4 XL are smartphones which include a chip called Soli.  Google denies any remaining allegations in this paragraph.

51.     To the extent the allegations in paragraph 51 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context.  Google denies any remaining allegations in this paragraph.

52.     To the extent the allegations in paragraph 52 purport to describe or quote one or more documents or webpages, Google states that those documents or webpages are the best source of their full content and context.  Google denies any remaining allegations in this paragraph.

53.     This paragraph sets forth argument and legal conclusions to which no response is required. To the extent this paragraph includes any allegations to which a response is required, Google denies them, and specifically denies that each and every element of at least claim 1 of the '697 patent is found in the Accused Products.

54.     This paragraph sets forth argument and legal conclusions to which no response is required. To the extent this paragraph includes any allegations to which a response is required, Google denies them, and specifically denies that it has committed acts of infringement in this District or any other district.

55.     This paragraph sets forth argument and legal conclusions to which no response is required. To the extent a response is required, Google admits that it received service of the Complaint and that the Complaint identified the '697 patent by number. Google denies any remaining allegations in this paragraph.

56.     This paragraph sets forth argument and legal conclusions to which no response is required. To the extent this paragraph includes any allegations to which a response is required,

Google denies them, and specifically denies that it has committed acts of infringement in this District or any other district.

57.     This paragraph sets forth argument and legal conclusions to which no response is required. To the extent this paragraph includes any allegations to which a response is required, Google denies them, and specifically denies that it has committed acts of infringement in this District or any other district.

**RESPONSE TO PLAINTIFF'S REQUEST FOR RELIEF**

Google denies the underlying allegations of Plaintiff's Prayer for Relief against Google, denies that Plaintiff is entitled to any relief whatsoever, and requests that the Court deny all relief to Plaintiff, enter judgment in favor of Google, and award Google its attorneys' fees as the prevailing party in the action.

**RESPONSE TO PLAINTIFF'S DEMAND FOR JURY TRIAL**

Google admits that Plaintiff demands a trial by jury, and Google likewise demands a trial by jury on all issues so triable.

**GOOGLE'S AFFIRMATIVE DEFENSES**

Google's affirmative defenses are provided below. Google further reserves the right to amend this Answer to add affirmative defenses, including allegations of inequitable conduct, and/or any other defenses currently unknown to Google, as they become known throughout the course of discovery in this action. Assertion of a defense is not a concession that Google has the burden of proving the matter asserted.

**FIRST AFFIRMATIVE DEFENSE – NON-INFRINGEMENT**

1.     Plaintiff is not entitled to any relief against Google because Google does not and has not directly or indirectly infringed, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '697 patent.

## SECOND AFFIRMATIVE DEFENSE – PROSECUTION HISTORY ESTOPPEL

1.      Plaintiff is estopped from construing or interpreting any claims of the '697 patent in such a way as may cover and/or include, either literally or under the doctrine of equivalents, Google's products, processes, services, and/or activities, and/or has waived any right to do so by reason of cancellation, limitation, or abandonment of claims, admissions, arguments, amendments, and/or representations made by or on behalf of the applicants in any proceedings before the United States Patent and Trademark Office.

## THIRD AFFIRMATIVE DEFENSE – INVALIDITY

1.      Each and every asserted claim of the '697 patent is invalid for failure to meet the requirements of Title 35, United States Code, including but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112 thereof, and the rules, regulations, and laws pertaining thereto, and/or obviousness type double patenting.

## FOURTH AFFIRMATIVE DEFENSE – EQUITABLE DOCTRINES

1.      Plaintiff's claims against Google regarding the '697 patent are barred by the equitable doctrines of waiver, estoppel, and/or acquiescence.

## FIFTH AFFIRMATIVE DEFENSE – LIMITATION OF DAMAGES

1.      The relief sought by Plaintiff is barred or limited by 35 U.S.C. §§ 286, 287, and/or 288. Plaintiff is not entitled to any damages for activities before the filing of this action. Plaintiff did not notify Google of its alleged infringement before the filing of this action.

## SIXTH AFFIRMATIVE DEFENSE – LACK OF STANDING

1.      Plaintiff lacks standing to bring this suit to the extent that Plaintiff and/or its predecessors-in-interest lacked sufficient chain of title to the '697 patent. In addition, Plaintiff

lacks standing to bring this suit to the extent that Plaintiff lacks substantial rights to the '697 patent.

## SEVENTH AFFIRMATIVE DEFENSE – LICENSE; PATENT EXHAUSTION

1.      On information and belief, Plaintiff's claims for relief are barred in whole or in part by an express or implied license, and/or the patent exhaustion doctrine.

## EIGHTH AFFIRMATIVE DEFENSE – NO WILLFUL INFRINGEMENT

1.      Plaintiff is not entitled to a finding of willful infringement with a corresponding increase in damages under 35 U.S.C. § 284.

## NINTH AFFIRMATIVE DEFENSE – NOT EXCEPTIONAL CASE

1.      Plaintiff is not entitled to a finding that this case is exceptional warranting attorneys' fees under 35 U.S.C. § 285, or pursuant to the Court's inherent power.

## TENTH AFFIRMATIVE DEFENSE – ENSNAREMENT

1.      WSOU's claims for infringement are barred by the doctrine of ensnarement.

## ELEVENTH AFFIRMATIVE DEFENSE – FAILURE TO STATE A CLAIM

1.      The Complaint fails to state a claim upon which relief can be granted.

## TWELFTH AFFIRMATIVE DEFENSE – INEQUITABLE CONDUCT

1.      U.S. Patent Application No. 12/693,667 was filed on January 26, 2010, and identified Terhi Tuulikki Rautiainen, Ping Hui, Risto Heikki Sakari Kaunisto, Ilari Aleksi Teikari, and Jani Petri Juhani Ollikainen as the named inventors. On July 28, 2011, U.S. Patent Application No. 12/693,667 was published as US 2011/0181509. On May 10, 2016, U.S. Patent Application No. 12/693,667 issued as U.S. Patent No. 9,335,825.

2.      On May 13, 2011—more than 15 months after the filing of U.S. Patent Application No. 12/693,667—U.S. Patent Application 13/107,090 was filed and identified Terhi Rautiainen as the named inventor. U.S. Patent Application 13/107,090 issued as U.S. Patent No. 8,803,697 on

August 12, 2014.

3. U.S. Patent Application No. 12/693,667 published as US 2011/0181509 constitutes prior art to U.S. Patent No. 8,803,697 at least under 35 U.S.C. § 102(e).

4. As a named inventor of both U.S. Patent Application No. 12/693,667 and U.S. Patent Application No. 13/107,090, at least Terhi Rautiainen was aware of and had knowledge of U.S. Patent Application No. 12/693,667 during the prosecution of U.S. Patent Application No. 13/107,090.

5. Neither Terhi Rautiainen nor anyone else owing a duty of candor to the United States Patent and Trademark Office involved with the prosecution of U.S. Patent Application No. 13/107,090 disclosed U.S. Patent Application No. 12/693,667 published as US 2011/0181509 to the United States Patent and Trademark Office during the prosecution.

6. U.S. Patent Application No. 13/107,090 and U.S. Patent Application No. 12/693/667 were examined by different Primary and Assistant Examiners at the United States Patent and Trademark Office.

7. At least claims 1-5 of U.S. Patent No. 8,803,697 would not have issued if U.S. Patent Application No. 12/693,667 published as US 2011/0181509 had been disclosed to the United States Patent and Trademark Office during prosecution of U.S. Application No. 13/107,090. The disclosure in U.S. Patent Application No. 12/693,667 at least anticipates claims 1-5 of U.S. Patent No. 8,803,697.

8. The preamble of claim 1 in U.S. Patent No. 8,803,697 recites "a method comprising…." U.S. Patent Application No. 12/693,667 discloses that "FIG. 6 schematically illustrates a method 50 comprising: at block 52, transmitting radio signals 6 that are at least partially reflected by a human hand or part thereof; at block 54, receiving the transmitted radio signals 6' after having been at least partially reflected by a gesturing human hand 8; at block 56,

13

detecting a predetermined time-varying modulation, characterizing the gesture, that is present in the received radio signals 6' compared to the transmitted radio signals 6'; and at block 58, changing the operation of an apparatus 2 in dependence upon the predetermined time-varying modulation."

9.      Claim 1 in U.S. Patent No. 8,803,697 recites "storing, in a mobile communications device, an association between a user notification alert and an event occurring at the mobile communications device."  U.S. Patent Application No. 12/693,667 discloses that the "apparatus 2 is configured to use radar technology to detect a gesture, such as a hand gesture, and to interpret the detected gesture as a user command.  U.S. Patent Application No. 12/693,667 also discloses that the "apparatus 2 may be any apparatus that it is desirable to control by user input and in particular non-touching gestures.  In some but not necessarily all embodiments, the apparatus 2 may be a hand portable apparatus 2 that is sized to fit in the palm of the hand or a jacket pocket.  It may, for example, be a personal electronic device such as a music player, a video player, a mobile cellular telephone, an eBook reader etc."  U.S. Patent Application No. 12/693,667 further discloses that "memory 22 stores a computer program 24 comprising computer program instructions that control the operation of the gesture detector 12 and possibly the apparatus 2 when loaded into the processor 20 and/or stores a computer program 26 comprising computer program instructions that control the operation of the controller 14 and possibly the apparatus 2 when loaded into the processor 20."  In addition, U.S. Patent Application No. 12/693,667 discloses "when there is an incoming telephone call, in one embodiment the controller 14 turns the radar on and it is configured to interpret predetermined time-varying modulation detected by the gesture detector 12 as a predetermined user input command and change the operation of the apparatus 2.  Different gestures may produce different user input commands which may, for example, answer the call, cancel the call or divert the call to, for example voicemail.  As another example, when there is an alarm alert, in one embodiment the controller 14 turns the radar on and it is configured to interpret predetermined

14

time-varying modulation detected by the gesture detector 12 as a predetermined user input command and change the operation of the apparatus 2. Different gestures may produce different user input commands which may, for example, silence the alarm permanently or temporarily silence the alarm."

10.     Claim 1 in U.S. Patent No. 8,803,697 recites "detecting the event by the mobile communications device and triggering the associated user notification alert." U.S. Patent Application No. 12/693,667 discloses that the "apparatus 2 may be any apparatus that it is desirable to control by user input and in particular non-touching gestures. In some but not necessarily all embodiments, the apparatus 2 may be a hand portable apparatus 2 that is sized to fit in the palm of the hand or a jacket pocket. It may, for example, be a personal electronic device such as a music player, a video player, a mobile cellular telephone, an eBook reader etc." U.S. Patent Application No. 12/693,667 further discloses that "when there is an alarm alert, in one embodiment the controller 14 turns the radar on and it is configured to interpret predetermined time-varying modulation detected by the gesture detector 12 as a predetermined user input command and change the operation of the apparatus 2. Different gestures may produce different user input commands which may, for example, silence the alarm permanently or temporarily silence the alarm." U.S. Patent Application No. 12/693,667 also discloses that "when there is an incoming telephone call, in one embodiment the controller 14 turns the radar on and it is configured to interpret predetermined time-varying modulation detected by the gesture detector 12 as a predetermined user input command and change the operation of the apparatus 2. Different gestures may produce different user input commands which may, for example, answer the call, cancel the call or divert the call to, for example voicemail."

11.     Claim 1 in U.S. Patent No. 8,803,697 recites "in response to the detecting of the event, detecting by the mobile communications device, using radar, movement of an external object

in a range outside the mobile communications device." U.S. Patent Application No. 12/693,667 discloses that the "apparatus 2 is configured to use radar technology to detect a gesture, such as a hand gesture, and to interpret the detected gesture as a user command." U.S. Patent Application No. 12/693,667 also discloses that the "reflection of the radio signals 6 off of a moving hand 8 imparts a modulation to the radio signals. A characteristic or characteristics of the transmitted radio signals vary in time as the gesture varies in time." U.S. Patent Application No. 12/693,667 further discloses that the "gesture detector may, for example, determine from the time varying characteristic or characteristics of the transmitted radio signal one or more time variable parameters that parameterize the gesture that caused the time-varying modulation. The parameters may include, for example, kinematic parameters of the gesture such as distance, speed, direction etc." Moreover, U.S. Patent Application No. 12/693,667 discloses that "a gesture may increase audio output volume and another gesture may decrease audio output volume." In addition, U.S. Patent Application No. 12/693,667 discloses that "when there is an incoming telephone call, in one embodiment the controller 14 turns the radar on and it is configured to interpret predetermined time-varying modulation detected by the gesture detector 12 as a predetermined user input command and change the operation of the apparatus 2. Different gestures may produce different user input commands which may, for example, answer the call, cancel the call or divert the call to, for example voicemail. As another example, when there is an alarm alert, in one embodiment the controller 14 turns the radar on and it is configured to interpret predetermined time-varying modulation detected by the gesture detector 12 as a predetermined user input command and change the operation of the apparatus 2. Different gestures may produce different user input commands which may, for example, silence the alarm permanently or temporarily silence the alarm."

12.     Claim 1 in U.S. Patent No. 8,803,697 recites "changing characteristics of the user notification alert based on the step of detecting movement." U.S. Patent Application No.

12/693,667 discloses that "when there is an incoming telephone call, in one embodiment the controller 14 turns the radar on and it is configured to interpret predetermined time-varying modulation detected by the gesture detector 12 as a predetermined user input command and change the operation of the apparatus 2.  Different gestures may produce different user input commands which may, for example, answer the call, cancel the call or divert the call to, for example voicemail."

13.     Claim 2 in U.S. Patent No. 8,803,697 recites a "method of claim 1, further comprising: detecting direction of the movement of the external object."  U.S. Patent Application No. 12/693,667 discloses that the "gesture detector may, for example, determine from the time varying characteristic or characteristics of the transmitted radio signal one or more time variable parameters that parameterize the gesture that caused the time-varying modulation.  The parameters may include, for example, kinematic parameters of the gesture such as distance, speed, direction etc."

14.     Claim 3 in U.S. Patent No. 8,803,697 recites a "method of claim 2, wherein the direction of the movement of the external object is detected to be one of the following: approaching and moving away."  U.S. Patent Application No. 12/693,667 discloses that "if the hand 8 is moving towards the radio receiver 10 the Doppler effect will result in an upwards frequency shift for the radio signals 6' (compared to the radio signals 6) that is proportional to the velocity of the hand toward the radio receiver 10 and if the hand 8 is moving away from the radio receiver 10 the Doppler effect will result in a downwards frequency shift for the radio signals 6' that is proportional to the velocity of the hand away from the radio receiver 10."

15.     Claim 4 in U.S. Patent No. 8,803,697 recites a "method of claim 1, wherein the event is selected from a group consisting of: an incoming call; an incoming mail; a received short message; a calendar alarm; a missed call; an unread short message; and an updated news feed."

17

U.S. Patent Application No. 12/693,667 discloses that as "another example, when there is an alarm alert, in one embodiment the controller 14 turns the radar on and it is configured to interpret predetermined time-varying modulation detected by the gesture detector 12 as a predetermined user input command and change the operation of the apparatus 2. Different gestures may produce different user input commands which may, for example, silence the alarm permanently or temporarily silence the alarm."

16. Claim 5 in U.S. Patent No. 8,803,697 recites a "method of claim 1, wherein the user notification is selected from a group consisting of: a sound signal; a vibration signal; a light signal; and a text displayed on a display of the apparatus." U.S. Patent Application No. 12/693,667 discloses that "when there is an incoming telephone call, in one embodiment the controller 14 turns the radar on and it is configured to interpret predetermined time-varying modulation detected by the gesture detector 12 as a predetermined user input command and change the operation of the apparatus 2. Different gestures may produce different user input commands which may, for example, answer the call, cancel the call or divert the call to, for example voicemail. As another example, when there is an alarm alert, in one embodiment the controller 14 turns the radar on and it is configured to interpret predetermined time-varying modulation detected by the gesture detector 12 as a predetermined user input command and change the operation of the apparatus 2. Different gestures may produce different user input commands which may, for example, silence the alarm permanently or temporarily silence the alarm."

17. On information and belief, individuals with a duty to disclose U.S. Patent Application No. 12/693,667 knew that the application was relevant to the decision of the United States Patent and Trademark office to issue U.S. Patent No. 8,803,697, and made a deliberate decision to withhold U.S. Patent Application No. 12/693,667 and to deceive the United States Patent and Trademark office by doing so.

## REQUEST FOR RELIEF

WHEREFORE, Google respectfully requests that the Court:

(A)     Enter judgment that Google does not infringe any claims of the '697 patent literally and/or under the doctrine of equivalents;

(B) Enter judgment that the '697 patent is invalid;

(C) Declare that this case is exceptional pursuant to 35 U.S.C. §285; and

(D) Award Google its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

Date:  July 16, 2021

Respectfully submitted,

*/s/  Tharan Gregory Lanier with permission,*
*by  Michael E. Jones*
Michael E. Jones (Texas Bar No. 10929400)
Patrick C. Clutter (Texas Bar No. 24036374)
**Potter Minton, P.C.**
110 North College, Suite 500
Tyler, Texas, 75702
+1 (903) 597-8311
+1 (903) 593-0846 facsimile
mikejones@potterminton.com
patrickclutter@potterminton.com

Tharan Gregory Lanier (*pro hac vice*)
**Jones Day**
1755 Embarcadero Road
Palo Alto, California, 94303
+1 (650) 739-3939
+1 (650) 739-3900 facsimile
 tglanier@jonesday.com

Joseph Sauer
(*pro hac vice* pending)
**Jones Day**
901 Lakeside Ave.
Cleveland, OH 44114
Office: +1.216.586.7506
jmsauer@jonesday.com

I. Sasha Mayergoyz
(*pro hac vice*)
**Jones Day**
77 West Wacker Drive
Chicago, IL 60601-1692
smayergoyz@jonesday.com

***Attorneys for Defendant Google LLC***

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 16, 2021, I electronically filed this document with the Clerk of Court via the Court's CM/ECF system which will send notification of such filing to all counsel of record, all of whom have consented to electronic service in this action.

/s/ *Michael E. Jones*
Michael E. Jones